The next case for this morning is Taksir v. The Vanguard Group. Mr. Steinberg. Good morning, Your Honors. May it please the Court, Stuart Steinberg on behalf of The Vanguard Group, Inc. I would like to reserve four minutes for rebuttal, please. Go ahead. Before I delve into the legal issues in the case, I wanted to make two quick points regarding the District Court's decision. First, the District Court's decision is an outlier. Neither the District Court nor the plaintiffs have cited any case holding that SLUSA's in connection with requirement is not met, where, as is the case here, an alleged misrepresentation coincided with purchases of covered securities by the plaintiffs. Well, you characterize it as an outlier, but something that certainly sets this case apart from so many securities actions is that this involves a brokerage fee. How many cases are there out there of a similar nature that have been based upon an alleged misrepresentation with respect to the amount of a brokerage commission? Well, we cited in our paper, Your Honor, the Shaw case out of California. The Shaw case was a case that was basically the same as this. It was an allegation that a broker had made representations regarding what the commissions would be and then overcharged clients. And the court in that case held that the claim was barred by SLUSA. And the court in that case applied the coincide test, which is the same test that gets applied in the anti-falsity 10b-5 context, and the same test that the Supreme Court in the Davitt decision in a unanimous case adopted as the test for SLUSA as well. So are you really arguing for what amounts to a but-for test here? I don't think we're arguing for a but-for test, but I think what we're saying in this case where there is an alleged misrepresentation about a commission and the commission can only be charged when there is an actual purchaser sale of securities, that that easily comes within the compliance of the coincides test. Isn't the upshot of that position that the plaintiffs here would not have incurred the overcharges but for their purchase of the securities? I guess, Your Honor, in that sense, the alleged fraud here, the overcharge, necessarily does depend on there being a purchaser sale of securities. And in that respect, I would say this case is very much like this court's prior decision in Rowinsky. And in Rowinsky, which is really the first major case where this court delved into SLUSA, there was claims of breach of contract and unfair trade practices against the broker, same claims that we have asserted here. And in that case, the allegation was that the broker gave biased investment research. Doesn't the misrepresentation have to be at least under the act of a material fact? The misrepresentation does have to be material. Are you saying it was material in this case? I think what we're saying is there's an allegation of a material misrepresentation. And as long as it's not immaterial as a matter of law, which we suggest it is not, then that allegation is sufficient to trigger SLUSA. You have to take that position, right? Because the irony here is your position is this is material or was material either to these plaintiffs or applying an objective test to any reasonable person. And on the other hand, the taxers have not pled materiality, have they? Well, I do think the taxers pled materiality. When they brought their claim for a fraud or deception under the catch-all provision of the Unfair Trade Practices Act, an element of that would be a material misrepresentation. And that material misrepresentation requirement overlaps with SLUSA's material misrepresentation requirement. How could a broker achieve, let's see, it was $7, I think? $7 is what was charged, correct. How is it material to individuals who have a portfolio of $600,000, whether they're paying $2 or whether they're paying $7? How is it material? I mean, what do they care? I don't mean to trivialize it. I'm just trying to think of how can they be concerned about that with such a huge portfolio in order to engage in a transaction? And if I may, just so we're clear on the facts in connection with Judge Fuente's question, we are talking about a fee, $7 versus $2, that is a flat commission for a purchase, right? Right. This is not one of the old brokerage commissions that would have been sliding on the basis of the number of shares or whether it's an odd lot transaction or whether it's a six-figure purchase or a seven-figure purchase. That's correct, Your Honor. So with that, let me answer the question this way. First is the materiality inquiry is an objective test, and so it has to be assessed from the standpoint of a reasonable investor. It's not assessed from the standpoint of the taxiers in particular. A reasonable investor, I wonder, actually cares about saving $5 in a transaction that may be in the hundreds of thousands. Maybe if you're buying one share. It could be considerably. If you have a share that's worth $10, you want to save the money. But in the background that I read here, that's not what we're talking about. Your Honor, I guess what I would say is this. First off, the Supreme Court and this Court has repeatedly said in the securities context, materiality is an inherently fact-intensive inquiry. It's rarely, if ever, suitable for resolution on a motion to dismiss. Materiality has two components. You're talking about a reasonable investor. Right, a reasonable investor, and it has two components. It has a qualitative component and it has a quantitative component. And I think what Your Honor is focusing on now is the quantitative component. I think we have to take a step back and say, qualitatively, the notion that somebody is being deliberately overcharged, the question is would a reasonable investor care that they were allegedly being deliberately overcharged, whether it's $1, $2, $5, or $10. I think the fact that somebody is alleging that the defendant in this case deliberately overcharged them, I think that bears heavily on the materiality of the inquiry. It apparently wasn't material enough to Mrs. Taxxer. She was prepared to and did make a purchase subsequent to the earlier purchases when she knew what the higher commission would be. That's correct, Your Honor, but again, it's not a subjective test. I understand that. Isn't it at least evidence in support of the application of an objective? It would be one piece of evidence, but there would be a lot of other pieces. Just to be clear, and everybody on the same page here, the district court, in fact, eventually determined that it didn't matter what test applied, objective or subjective, right? The district court started by applying materiality erroneously, we say, as a subjective test, looking only at whether the Taxxers alleged they relied or didn't rely on the particular misrepresentation. The district court on reconsideration then said the import should have been clear. It was an objective test is what we meant to apply. This court, I think what we need to look at are some of the best execution cases, because those are another series of cases where there's an overcharge. An overcharge of what? An overcharge on the security itself. Yeah. Isn't that a fundamental distinction when we're talking about an overcharge on the security itself as opposed to an overcharge on the fee? I don't think so, Your Honor. As the Ninth Circuit said in Fleming, what is material, claiming material, in the words of the Ninth Circuit in the Fleming case, is the net price to purchase a security. And the net price is a function of both the price of the security and the cost of trading the security. Well, but Fleming also used this exact case as an example of what is against your side, right? I understand it was a hypothetical. It was a hypothetical, and it posited that there was no alleged misrepresentation, that it was only a dispute over the interpretation of the contract. Here, the plaintiffs have specifically alleged misrepresentation and frankly have conceded in briefing to this court that their claim is based on a misrepresentation. But if I may go back for a minute to the best execution cases, this court in its Newton decision, en banc, recognized that an alleged misrepresentation that a broker was going to undertake best execution and then didn't would be material. And as that case makes clear, in the best execution setting, you could be talking about literally pennies per share, right? If you bought 100 shares, we'd be talking about an alleged overcharge that's less than the overcharge that's alleged in this case. And again, if you look at the best execution SLUSA cases as well, it's clear as well that you're dealing with very small dollar amounts there. But none of the courts have focused on the fact that it's a small dollar amount. What they focused on is the qualitative nature of the misrepresentation that's alleged in the case. And so doesn't the in connection with element deal with that? The in connection with element under DAVIT is actually, the test is coincides. But we agree that materiality is an element of the overall SLUSA inquiry. And regardless of whether you import materiality into the in connection with requirement as the district court did or you don't, we recognize that materiality is still an element that would need to be met here. But again, as long as it's not immaterial as a matter of law under SLUSA, that's enough. Just the way a defendant seeking to invoke SLUSA doesn't need to actually prove that there's a misrepresentation to get the benefit of SLUSA, so too you don't need to show it's material as long as it's not immaterial as a matter of law. It seems that you've gone to great pains to steer us away from the Supreme Court's decision in choice. If we disagree with you, you prevail. If we think choice should be applied. If choice should be applied, we do think we prevail because we think the district court erred by holding that no reasonable investor would think it was significant as a matter of law that he or she was being charged more than she or he was told they were going to be charged. So the way we would think about this in order to coincide with your argument, if a reasonable investor is buying, let's say, 100 shares, and that reasonable investor sees that now you have to pay $7 for that transaction, which is $5 more than I have promised, I am not going to purchase those 100 shares. And that would be immaterial, that would invoke the material element. Is that your argument? That's part of the argument. It might be that I'm not going to buy those 100 shares, Your Honor. A reasonable investor would not make that transaction because that reasonable investor is paying $5 more for the transaction than he or she had been promised. Or the investor might say, you know what, I don't want to trade through Vanguard, I want to trade through one of the many other brokers that are out there. That's assuming that investor would get the $2 transaction fee. Well, the fact that there's an entire discount offer... Let me just understand what you just said. Are you suggesting that an investor with an account at Vanguard, who learns that instead of $7, they can pay $2 for a transaction at another brokerage firm, might pick up and move that account for the $5? Potentially. Potentially. But, Your Honor, I want to be clear. The transaction costs and time involved in that would warrant the $5 differential. Your Honor, many people also have multiple brokerage accounts. But the point is not just $7 versus $2. The allegation is that there's a fraudulent and deceptive overcharge, that this is purposeful. And in that setting, I think a reasonable investor would want to know that his or her broker was allegedly fraudulently overcharged. That example is taking it out of the materiality. Well, that's the misrepresentation that's alleged here. It's a material misrepresentation. The misrepresentation being alleged is that Vanguard, on its website, made a bunch of representations about programs it had and what the cost of trading would be. And the allegation is those representations on the website were not true. They were false, misleading, and fraudulent. So that's the essence of the case that's been brought, Your Honor. We'll have you back on rebuttal. Thank you. Mr. Steinberg, thank you very much. Mr. Nelson? Good morning. Christopher Nelson for the appellees, Drs. Alex and Ortexier. As the court already noted in at least one earlier argument today, it's a good idea to look to the text of the statute and the purposes underlying the enactment of the statute. Those are two, I won't say completely different, but two different... Text is one thing, purpose is the other. Yes, Your Honor. Congress' purpose in enacting SLUSA was to curb abusive... Strike suits. Strike suits, frivolous, speculative securities, fraud-class actions that were being filed in state court to dodge the protections of the Private Securities Litigation Reform Act. But in that, didn't the Supreme Court also tell us that the magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities is something we ought to be considering? It certainly is something that was a factor underlying that decision, but the difference between DABIT and in this instance, as the court noted earlier, is that the false statement instance, and I'd like to be very careful and clear about my use of the word false statement. We allege a false statement. We do not allege a fraudulently false statement. Those are two separate concepts. But yes, Congress is concerned with ensuring that the courts and the national markets are regulated and that allegations of falsity with respect to the underlying security at issue, the sort of issue that would be raised or brought before a court in a 1085 class action under the PSLRA, that is the type of misrepresentation and fraud that Congress was interested in regulating. Which of these two major cases should we focus on, DABIT or Trois? Which one is more appropriate to apply in this case? I believe that Trois is more appropriate because of its recency, but I also believe that in terms of the standards applied, that we're really not talking about something that's wildly different among the two cases. I think that both of those cases, and I'm going to quote Arthur A. Trois talks about what a reasonable investor would do. What a reasonable investor would do. In this instance, if we were to talk about a reasonable investor, as the court, again, already recognized, all of the participants in the Vanguard Voyager Fund, that was the vehicle through which the appellees made their purchases, you must have, I believe, half a million dollars invested in and with Vanguard. 600,000. 600,000 invested with Vanguard before you are eligible for the reduced commission structure. Well, that was the case here. It is. They met the threshold. They met the threshold, and my point in that is if we have... So why aren't they right that you promise us that we can have transactions at $2 per transaction, and then you charge $7? That's exactly what they're complaining about, but in terms of materiality, again, for someone with 600,000... Well, are they right about that? Are they right that they should have been entitled... With the materiality element aside for a moment, aren't they right that you... Yes, they should. Promise us a lower transaction fee, and then you charge the higher fee? That's correct. And we don't know why. They want to have a claim. They do have a claim. They certainly have a claim for breach of contract. Not under the securities act. I don't believe that would be the correct way to... I have a contract claim. You have a contract claim, but I think phrasing this as a securities fraud claim... It's a breach of contract. Yes. If you were to try to phrase the false statement on which they relied, or the false statement that was made on the company's website, you would have to have something additional beyond that, I think, to put this within the realm of securities litigation. I think you need a false statement about the product itself that was fraudulently intended, or at least was so severely reckless as to be equivalent to fraudulent intent. But what's left before us is a breach of contract. Yes, that's correct. We have never alleged a fraud claim, or rather we've never alleged fraud. We've never alleged a violation of rule 10b-5, or the security exchange act, or even the securities act. All we've said here is Vanguard represented that the transaction would cost $2 a trade, and they instead charged $7 a trade. So in terms of the materiality question, I think there's no question that when we're talking about the amounts of money here, and we're talking about the type of false statement and kind of the requirement to which the false statement was made, that this is an immaterial statement for the purposes of SLUSA, regardless of whether we're talking about. How do we know whether a reasonable investor would be swayed by this change in fees? I think the court has already covered that issue. If we're talking about a difference of $5 a trade, and you have $600,000 invested with Vanguard, I think that $5 is almost indisputably immaterial with respect to their other investments. There's sort of a secondary requirement, and if the court doesn't mind I'd like to move to that away from materiality, and that's with respect to the second thing that the Supreme Court discussed in choice, and that is that in order to fall within the boundaries of SLUSA and be precluded, the false statement can't just be a false statement. It has to be a fraudulent misrepresentation, and here we don't plead that the transaction was fraudulently induced. We don't know why Vanguard charged $7 instead of $2. Vanguard expressly argued below that we failed to allege fraud and inducement, and that is why our claims under the Pennsylvania Unfair Trade Practices Act were dismissed by Judge Roof. And then finally, when Judge Roof considered this question, we feel that she evaluated materiality and the question of inducement and reliance at length in her opinion, and concluded that no reasonable investor would conclude that that $5 per transaction difference mattered. And if it doesn't matter, then this is a simple breach of contract case completely removed from SLUSA. If we were to resolve this question of materiality as you would like us to, we need not then delve into the in connection with language, do we? I believe that's correct, Your Honor. I'm happy to present on in connection with if the Court would like, but I think that we don't even need to reach that point. I know it's in our papers, but I'll briefly hit it. But before I do that, I wanted to talk a little bit about the Fleming case out of the Ninth Circuit, and the Court has already picked up on this point, that while Vanguard relies quite heavily on Fleming, that case is very, very different, and the Ninth Circuit recognized the difference by postulating a hypothesis that is exactly the scenario here. This idea that if the Ninth Circuit had been presented with this question of a plaintiff client of a brokerage firm who had been told that he would be charged $5 a trade and then was later charged $10 a trade, the Court concluded that in that instance, SLUSA simply wouldn't apply. And we feel that with the Ninth Circuit's analysis and determination at that point, that we really don't have any kind of a dispute, or rather we don't believe that there's a rational dispute about this question here as to whether SLUSA itself is triggered. And there are a number of other cases that we discuss in our briefing to the Court, notably Appert v. Morgan Stanley out of the Seventh Circuit, which again goes to this materiality question, and the Court again extensively considered this issue and concluded, and I would like to quote, that broker fees are not objectively material to any class member's investment decisions. So which case was that? I'm sorry, that was the Appert v. Morgan Stanley, and that's out of the Seventh Circuit, 2012. Another case by a circuit court addressing the same or similar issue, again it is not with a direct broker fee issue, is Friedman Investments v. Pack Life, which is out of the Ninth Circuit in 2013. And in that case, the Ninth Circuit concluded that before SLUSA preclusion can apply, the fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves. And we simply don't have that here. We have a straight, plain representation on our website of an amount that the company said it was going to charge, and then it did not. And I believe the Court has no further questions. No further questions. Thank you. Thank you, Your Honor. Mr. Nelson, Mr. Steinberg, rebuttal. Thank you, Your Honor. A few quick points. First, on the last point, that a misrepresentation needs to relate to the nature of the security itself, this Court rejected that in the Angolastro case. The Supreme Court rejected that position in the Zanford case. An example would be a churning case against a broker, where a broker is alleged to have engaged in trades just to inflate commissions that has nothing to do with the nature or value of the securities itself. With respect to the Abbott case, that was not an overcharged case. That involved a processing fee. The amount of the fee that was disclosed was the exact amount of the fee that was charged. And in that setting, the Court said, where you're charged exactly what you were told you were going to be charged, that's not a material misrepresentation. In that case, what they were complaining about was that there was a hidden profit that was built into the fee that was being charged. But again, the fee charged was what was disclosed. And I did want to bring to the Court's attention a brand-new 11th Circuit case that came out last Friday that distinguishes Abbott on this very basis. It's Brink v. Raymond James, 2018 Westlaw 275-2572. And in that case, the relevant passage I'd like to read to you, Raymond James argues that Feynman and Appert are distinguishable because the alleged hidden profit built into the processing fee in this case is much higher than the charges in those two cases. We are unconvinced. Here it is true that the alleged undisclosed profit is more than a dollar or two, but this is a distinction without a difference. Brink, just like the plaintiffs in Feynman and Appert, knew how much she was being charged for costs associated with each transaction and was never charged more than she agreed to pay. It is the nature of the fees, not their amount, that renders the misrepresentation immaterial as a matter of law. Again, the facts here are different. The allegation is that there was a representation that there would be a charge of one thing, and then there was a different charge that was higher than that amount. On the issue of inducement that was raised by my opponent, inducement is not a SLUSA requirement, and the Supreme Court in Davitt addressed this expressly. It said that in Davitt it had long ago rejected the view that the in connection with requirement is met, quote, only when the plaintiff himself was defrauded into purchasing or selling particular securities. And again, this goes back to the objective reasonable investor test versus the subjective reliance test. And in choice, the court said we do not here modify Davitt. There's nothing in choice to suggest that the Supreme Court was overturning 40 years' worth of in connection with jurisprudence, none of which has ever required proof of individual reliance or that a particular plaintiff was defrauded into a transaction. Another thing that my opponent has said is that they never alleged fraud. They brought a claim for fraud or deception under the catch-all provision of the unfair practices claim. And so they did allege fraud. And their breach of contract claim is predicated on the exact same misrepresentations that are the basis for that fraud claim. So what? That claim was dismissed? The nature of the representation on the website is alleged to have been a fraudulent representation. That's what triggers SLISA. If there's a misrepresentation, material misrepresentation that's alleged, here they've alleged that the disclosures that were made on Vanguard's website were misleading and fraudulent. And that's the reason why SLISA is triggered. All right. Thank you. Thank you very much, Mr. Steinberg. Thank you, Mr. Nelson. We've not seen a lot of SLISA cases. This is an interesting one, and the panel will take the matter under advisement. We'll ask the clerk to adjourn the proceedings.